# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

December 12, 2011

No. 11-20174

Lyle W. Cayce
Clerk

JORGE GONZALEZ, Individually and on Behalf of All Other Similarly Situated,

Plaintiff-Appellant

v.

BANK OF AMERICA INSURANCE SERVICES, INCORPORATED; BA INSURANCE SERVICES, INCORPORATED; INTERSECTIONS, INCORPORATED; INTERSECTIONS INSURANCE SERVICES, INCORPORATED; LOEB HOLDING, CORPORATION; GLOBAL CONTACT SERVICES, L.L.C.; AMERICAN INTERNATIONAL GROUP INCORPORATED; NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PENNSYLVANIA; BANK OF AMERICA, N.A.,

Defendants-Appellees

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:09-CV-2946

Before BENAVIDES, PRADO, and GRAVES, Circuit Judges.

PER CURIAM:[*]

In this putative class-action, Plaintiff-Appellant Jorge Gonzalez ("Gonzalez") appeals the district court's dismissal of the various state and federal

---

[*] Pursuant to FIFTH CIRCUIT RULE 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in FIFTH CIRCUIT RULE 47.5.4.

No. 11-20174

claims that he brings against Defendants-Appellees Bank of America Insurance Services, Inc., BA Insurance Services, Inc., Intersections, Inc. ("Intersections"), Intersections Insurance Services, Inc. ("Intersections Insurance"), Loeb Holding, Corp. ("Loeb Holding" or "Loeb"), Global Contact Services, L.L.C. ("Global"), American International Group Inc. ("AIG"), National Union Fire Insurance Company of Pittsburgh, Pennsylvania ("National Union"), and Bank of America, N.A. ("Bank of America"). We AFFIRM the judgment, except that we modify the dismissal to be without prejudice as to Defendant-Appellee Loeb Holding.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff-Appellant Gonzalez is a Mexican immigrant who opened an account at Bank of America. He brings this putative class action alleging that Defendants-Appellees are engaged in a wide-reaching scheme to illegally sell inferior insurance products to Bank of America customers.

In his amended complaint, Gonzalez generally alleges that Bank of America identifies lower-income Spanish-speaking customers as potential targets, and that Bank of America then conveys information about these customers to Intersections or Intersections Insurance. Gonzalez claims that sharing this information violates the deposit agreement that customers sign with Bank of America when opening an account. Specifically, Gonzalez states that it violates Bank of America's customer Privacy Policy, which he alleges was incorporated into the deposit agreement by reference.

Gonzalez further alleges that once Intersections acquires customer information from Bank of America, it hires a telemarketing company, often Global, to contact these individuals to offer them death and disability insurance. Gonzalez states that these telemarketers sometimes use misleading sales techniques, such as misrepresenting the premium and coverage amounts, the availability of coverage, acting as though they were affiliated with Bank of America, and enrolling individuals despite only receiving a request for more

information.  According to Gonzalez, the issued insurance policies are often underwritten by AIG or National Union.  Gonzalez alleges that withdrawals for the payment of premiums are made electronically from the consumers' bank accounts with Bank of America, usually by a company called "Smart Step." Gonzalez also claims that the insurance policies are inferior and overpriced.  As a result of these business practices, Gonzalez alleges that he and other potential class members have been damaged by the amount of money that was withdrawn from their bank accounts, or by the amount the premiums exceeded the actual value of the insurance.

Although providing a litany of allegations about the general business practices of the various Defendants, Gonzalez includes almost no allegations about his own interactions with the Defendant companies, or about actual actions taken against him.  The only personal allegations made by Gonzalez are that he opened a bank account at Bank of America on an undisclosed date, that he was contacted by a telemarketer who persuaded him to purchase insurance, and that withdrawals for premiums were made from his account.

In his amended complaint, Gonzalez brings claims for:  (1) breach of contract against Bank of America; (2) breach of fiduciary duty against Bank of America; (3) common law fraud against all of the Defendants-Appellees; (4) unjust enrichment against all of the Defendants-Appellees; and (5) racketeering under Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(c), against all of the Defendants-Appellees.  As to the RICO claim, Gonzalez alleges that Defendants-Appellees committed various acts of fraud in violation of the mail and wire fraud statutes, 18 U.S.C. §§ 1341, 1343, the Telemarketers and Consumer Fraud and Abuse Prevention Act, 15 U.S.C. § 6101 et seq., and the Access Devices Act, 18 U.S.C. § 1029.[1]

---

[1] Gonzalez brings these claims on behalf of a putative class composed of all individuals "who [] have opened or maintained deposit accounts at Bank of America, [] since June 9, 2006,

No. 11-20174

The district court granted Defendants-Appellees' motions to dismiss, finding: (1) that Gonzalez lacked standing to sue because he failed to allege any personal injury; (2) that Gonzalez failed to make a prima facie case of personal jurisdiction over Loeb Holding; and, on the merits, (3) that Gonzalez failed to state a claim because he did not make any individual allegations and because the conduct alleged to have been taken against him was not actionable.

The district court entered judgment on February 22, 2011, dismissing the amended complaint with prejudice.[2]  The following day, Gonzalez filed a motion for leave to file a second amended complaint.   Prior to the district court ruling on that motion, Gonzalez filed a notice of appeal,  appealing the dismissal of his amended complaint, as well as the district court's "implicit denial" of his motion for leave to amend.  The next day, on March 11, the district court requested that Gonzalez provide additional information about the date on which his motion to amend was served on Defendants-Appellees.   Rather than supply this information, Gonzalez filed an objection to the order, indicating in his objection that he no longer wanted the district court to rule on his motion to amend.  The district court then placed a notice on the docket, stating that it understood Gonzalez's objection to be a withdrawal of his motion.  In response, Gonzalez filed another similar objection, stating that the district court no longer had

---

[] with average monthly balances of less than $5,000 (or the amount targeted by Bank of America and/or Intersections), [] whose personal information  Bank of America or one or more of its subsidiaries has provided to Intersections or any of its subsidiaries, [] who have been telephoned by an agent or contracted representative of Intersections or one of its subsidiaries, including [Global], to telemarket supposed accidental death or disability insurance coverage, [] from whose demand deposit accounts at Bank of America funds for supposed premiums for such supposed insurance benefits have been electronically withdrawn [] and who have been extended supposed accidental death and/or disability insurance type coverage by AIG or [National Union]."

[2] The district court did not explicitly state if the dismissal was with or without prejudice.  Accordingly, the dismissal was made *with* prejudice.  *Memon v. Allied Domecq QSR*, 385 F.3d 871, 874 n.6 (5th Cir. 2004).

No. 11-20174

jurisdiction over this suit.  Because of Gonzalez's objections, no formal ruling was ever made on his motion to amend.

## II. STANDARD OF REVIEW

This court reviews de novo a district court's grant of a motion to dismiss under Rule 12(b)(6).  *Ballard v. Wall*, 413 F.3d 510, 514–15 (5th Cir. 2005).  We accept "all well-pleaded facts as true and view[] those facts in the light most favorable to the plaintiff."  *Stokes v. Gann*, 498 F.3d 483, 484 (5th Cir. 2007).  However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).  While complaints generally need to contain only a short and plain statement of the cause of action, allegations of fraud must "state with particularity the circumstances constituting fraud . . . ."  Fed. R. Civ. P. 9(b).  Under Rule 9(b), a plaintiff must include the "time, place and contents of the false representations, as well as the identity of the person making the misrepresentation and what [that person] obtained thereby."  *U.S. ex rel. Russell v. Epic Healthcare Mgmt. Grp.*, 193 F.3d 304, 308 (5th Cir. 1999) (quotation and internal citations omitted) (alteration in original).[3]  We also review a district court's decision to dismiss for lack of standing  or personal jurisdiction de novo.  *Ordonez Orosco v. Napolitano*, 598 F.3d 222, 225 (5th Cir. 2010); *Gardemal v. Westin Hotel Co.*, 186 F.3d 588, 592 (5th Cir. 1999).

A district court's denial of a motion for leave to amend a pleading or a denial of a motion to amend a judgment is reviewed for abuse of discretion.  *Rio*

---

[3] Gonzalez requests that the Court relax the Rule 9(b) pleading standard.  The fraud pleading requirements may be relaxed when the facts relating to the fraud are "peculiarly within the perpetrator's knowledge."  *U.S. ex rel. Doe v. Dow Chem. Co.*, 343 F.3d 325, 330 (5th Cir. 2003).  Here, however, relaxing the standard is not appropriate because nearly all of the material facts that Gonzalez fails to allege in his amended complaint, such as the contents of the allegedly fraudulent statements made to him, were known to Gonzalez at all times.

No. 11-20174

*Grande Royalty Co., Inc. v. Energy Transfer Partners*, 620 F.3d 465, 468 (5th Cir. 2010); *Rosenzweig v. Azurix Corp.*, 332 F.3d 854, 863 (5th Cir. 2003).

## III. ANALYSIS

As a preliminary matter, we first consider the district court's holding that Gonzalez failed to make a prima facie case of personal jurisdiction over Loeb Holding. *Guidry v. U.S. Tobacco Co.*, 188 F.3d 619, 623 n.2 (5th Cir. 1999) ("Personal jurisdiction is an essential element of the jurisdiction of a district court, without which it is powerless to proceed to an adjudication.").[4] A plaintiff bears the burden of proving the district court's personal jurisdiction, but relevant factual disputes should be resolved in the plaintiff's favor. *Revell v. Lidov*, 317 F.3d 467, 469 (5th Cir. 2002). At this stage, a plaintiff need only plead a prima facie case of personal jurisdiction. *Felch v. Transportes Lar–Mex S.A. DE CV*, 92 F.3d 320, 325 (5th Cir. 1996). The only argument that Gonzalez makes to support personal jurisdiction over Loeb Holding is an alter ego theory, in which he claims that Loeb controls the operations of Intersections because Loeb is an investor in Intersections.[5]

Under the federal rules, except where a federal statute provides for more expansive personal jurisdiction, "the personal jurisdiction of a federal district court is coterminous with that of a court of general jurisdiction of the state in

---

[4] We must also address the issue of standing before proceeding to the merits. *Rivera v. Wyeth-Ayerst Labs.*, 283 F.3d 315, 319 (5th Cir. 2002). Although the issue of standing is a close question, given the liberal manner in which allegations should construed at the pleading stage, we find that Gonzalez narrowly meets the requirements for standing because he alleges that he suffered a personal injury, caused by Defendants-Appellees, which is redressable by the Court. *Little v. KPMG LLP*, 575 F.3d 533, 540 (5th Cir. 2009); *Pub. Citizen, Inc. v. Bomer*, 274 F.3d 212, 218 (5th Cir. 2001) (stating that general factual allegations of injury may suffice at the pleading stage). The deficiencies in Gonzalez's claims result from a failure to adequately allege facts constituting a cause of action, and dismissal is more appropriate on the merits. *See Cole v. General Motors Corp.*, 484 F.3d 717, 723 (5th Cir. 2003).

[5] Loeb Holding is an investment firm incorporated in Maryland with a principal place of business in New York. Loeb states that it owns no property, does no business, has no employees, and otherwise has no contacts with Texas.

6

which the district court sits." *Submersible Sys., Inc. v. Perforadora Cent., S.A. de C.V.*, 249 F.3d 413, 418 (5th Cir. 2001).[6] Here, the Texas long-arm statute extends jurisdiction to the fullest extent allowed by the Due Process Clause of the Fourteenth Amendment. *Stroman Realty, Inc. v. Antt*, 528 F.3d 382, 385 (5th Cir. 2008); *Wilson v. Belin*, 20 F.3d 644, 647 (5th Cir. 1994). Thus, we only need determine whether exercising jurisdiction over Loeb Holding would offend due process. *Alpine View Co. Ltd. v. Atlas Copco AB*, 205 F.3d 208, 214 (5th Cir. 2000). Due process requirements are met when the defendant has certain minimum contacts with the forum such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice. *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). Minimum contacts can be established through either specific or general jurisdiction. *Alpine*, 205 F.3d at 215.

When determining if personal jurisdiction can be imputed through a parent-subsidiary relationship, we begin with a presumption that a subsidiary, even one that is wholly-owned, is independent of its parent for jurisdictional purposes. *Dickson Marine Inc. v. Panalpina, Inc.*, 179 F.3d 331, 338 (5th Cir. 1999). This presumption can only be overcome by the plaintiff with clear

---

[6] We note that Plaintiff-Appellant Gonzalez brought a claim under RICO, which separately provides for service of process and personal jurisdiction. 18 U.S.C. § 1965; *PT United Can Co. Ltd. v. Crown Cork & Seal Co., Inc.*, 138 F.3d 65, 70–73 (2d Cir. 1998). Gonzalez, however, never raised this ground for personal jurisdiction—either in this Court or in the district court—and it is therefore waived. *See Dunbar v. Seger-Thomschitz*, 615 F.3d 574, 576 (5th Cir. 2010) (arguments or theories not presented to district court are waived); *Martco Ltd. P'ship v. Wellons, Inc.*, 588 F.3d 864, 877 (5th Cir. 2009) (same); *see also Touchcom, Inc. v. Bereskin & Parr*, 574 F.3d 1403, 1410–11 (4th Cir. 2009) (stating that plaintiff can waive grounds for personal jurisdiction by failing to raise it in district court); *World Wide Minerals v. Republic of Kaz.*, 296 F.3d 1154, 1168 (D.C. Cir. 2002) (plaintiff waived potential grounds for personal jurisdiction under RICO by not arguing them on appeal). Because this ground for personal jurisdiction was waived, we need not explore the contours of RICO's jurisdictional provisions. Instead, we only consider whether jurisdiction is permissible under the traditional contacts analysis. *See Cory v. Aztec Steel Building, Inc.*, 468 F.3d 1226, 1230–33 (10th Cir. 2006) (analyzing traditional contacts analysis after finding RICO does not support jurisdiction); *World Wide Minerals*, 296 F.3d at 1168–69 (analyzing minimum contacts analysis after finding waiver of jurisdiction under RICO).

evidence that is sufficient to demonstrate that the subsidiary is the alter ego of the parent. *Id.* In *Hargrave v. Fibreboard Corporation*, we set forth factors to be considered when deciding whether a parent company can be held amenable to personal jurisdiction because of the acts of a subsidiary. 710 F.2d 1154, 1159 (5th Cir. 1983). These factors are: (1) the amount of stock owned by the parent of the subsidiary; (2) if the two corporations have separate headquarters; (3) if they have common officers and directors; (4) if they observe corporate formalities; (5) if they maintain separate accounting systems; (6) whether the parent exercise complete authority over the subsidiary's general policy; and (7) whether the subsidiary exercise complete authority over its daily operations. *Id.* at 1160; *Dickson Marine*, 179 F.3d at 339 (stating *Hargrave* test).

As noted by the district court, Gonzalez offers almost no support for his allegation that Loeb Holding controls the activities of Intersections. The only evidence offered by Gonzalez is a Form 10-K submitted by Intersections to the Securities and Exchange Commission in 2008. The form states that Loeb owns forty-two percent of Intersection's shares and notes that insiders "have substantial control over us and could delay or prevent a change in corporate control, which may harm the market price of our common stock." Gonzalez offers no other evidence and makes no other allegations about the relationship between Loeb Holding and Intersections.

This showing is insufficient to make out a prima facie case of personal jurisdiction over Loeb Holding. In the past, we have held that demonstrating 100% ownership of stock and commonality of directors and officers is insufficient to show that the subsidiary is an alter ego of it parent. *Hargrave,,* 710 F.2d at 1160–61; *see also Dalton v. R & W Marine, Inc.*, 897 F.2d 1359, 1363 (5th Cir. 1990) (declining to find an alter ego even though one entity owned 100% of its subsidiary, was responsible for corporate policy, funneled revenues into centralized accounts, and filed consolidated tax returns because those factors

were "outweighed, albeit modestly" by observation of corporate formalities and subsidiary control over certain daily operations).  The statement that insiders have substantial control over Intersections in the Form 10-K does not establish that Loeb Holding controls the actual operations of Intersections.  It does not mention Loeb and there is no evidence or allegation that Loeb has any greater influence over Intersections than would be normal for a significant shareholder in a company.  Given that we have required a plaintiff make a stronger showing before finding personal jurisdiction in this situation, we agree with the district court's dismissal of Loeb Holding for lack of personal jurisdiction.  *See, e.g.*, *Jackson v. Tanfoglio Giuseppe, S.R.L.*, 615 F.3d 579, 586–88 (5th Cir. 2010) (finding much stronger and more detailed allegations insufficient to establish jurisdiction); *Turan v. Univ. Plan Invs. Ltd.*, 248 F.3d 1139, 1139 (5th Cir. 2001) (per curiam) (same).  Thus, we conclude that the claims against Loeb Holding were properly dismissed.  We modify the judgment, however, to indicate that the dismissal of Loeb Holding for lack of personal jurisdiction is without prejudice.  *Guidry*, 188 F.3d at 623 n.2 (stating that dismissal for lack of personal jurisdiction should be made without prejudice).

With regard to the merits of the claims that Gonzalez asserts against the remaining Defendants-Appellees, we also find no error in the district court's rulings.  In its opinion dismissing the amended complaint, the district court found that Plaintiff-Appellant Gonzalez failed to state a claim because he did not make any individual allegations and because the conduct alleged to have been taken against him is not actionable.  Having reviewed the record below and the briefing on appeal, we find no error in the district court's decision to dismiss Gonzalez's claims on the merits under Rules 9(b) and 12(b)(6).  As noted by the district court, Gonzalez's amended complaint contains almost no allegations about events or actions affecting him.  Although the amended complaint is replete with generalized allegations of wrongful conduct, Gonzalez fails to allege

facts indicating that Defendants-Appellees acted in an actionable manner towards him personally.  Because Gonzalez does not allege that he personally is entitled to any relief, we also agree with the district court's ruling that Gonzalez fails to adequately state a claim against the remaining Defendants-Appellees.

Gonzalez also argues that the district court erred by not granting his motion for leave to file a second amended complaint.  In making this argument, Gonzalez ignores the fact that he abandoned that motion in the district court.  Gonzalez appealed before obtaining a ruling on his motion, and he twice filed "objections," stating that he no longer wanted a ruling from the district court.  Given these filings, the district court properly deemed his motion to amend abandoned.  *See* 56 Am. Jur.2d Motions, Rules, and Orders § 31 (2011) (a motion should be deemed abandoned where the movant "acts in a manner which is not consistent with the object of the motion," and such motion should be treated as though it were never filed).

We have consistently held that we do not consider arguments on appeal that the district court was not given an opportunity to rule upon.  *See Vogel v. Veneman*, 276 F.3d 729, 733 (5th Cir. 2002) (to be considered on appeal, "[a] party must have raised an argument to such a degree that the trial court may rule on it" (quotation omitted)).  Indeed, a party may not "allude to an issue in the district court, abandon it at the crucial time when the district court might have been called to rule upon it, and then resurrect the issue on appeal." *Louque v. Allstate Ins. Co.*, 314 F.3d 776, 779 n.1 (5th Cir. 2002); *see also Hargrave*, 710 F.2d at 1163–64.  Because Gonzalez abandoned his motion, he cannot claim on appeal that the district court abused its discretion by not granting it. *See Copar Pumice Co. v. Morris*, 639 F.3d 1025, 1030 (10th Cir. 2011) (holding that a party waives all appellate review of a withdrawn motion).  Although Gonzalez describes the district court's judgment as an "implicit" denial of his motion for leave to amend, this characterization is inaccurate because Gonzalez filed his

motion to amend *after* the district court issued its judgment. *See Addington v. Farmer's Elevator Mut. Ins. Co.*, 650 F.2d 663, 666 (5th Cir. 1981) (dismissal with prejudice is an implicit denial of a *pending* motion to amend).[7]

Finally, even if the various filings are construed as a denial of the motion to amend, a denial would not be an abuse of discretion.[8] Denial of a motion to amend is warranted for "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of the allowance of the amendment, and futility of the amendment." *Rosenblatt v. United Way of Greater Hous.*, 607 F.3d 413, 420 (5th Cir. 2010) (internal quotation and punctuation omitted). "In cases where a party seeks to amend [his] complaint after entry of judgment, '[this Court has] consistently upheld the denial of leave to amend where the party seeking to amend has not clearly established that he could not reasonably have raised the new matter prior to the trial court's merits ruling.'" *Vielma*, 218 F.3d at 468 (quoting *Briddle v. Scott*, 63 F.3d 364, 380 (5th Cir. 1995)); *Rosenblatt*, 607 F.3d at 420 (same). All of the facts that Gonzalez now seeks to include in his second amended complaint could have been alleged in the amended complaint. Gonzalez chose not to allege any of these facts for the

---

[7] In support of this argument, Gonzalez also attempts to construe a footnote in his opposition to Defendants-Appellees' motions to dismiss as a motion to file a second amended complaint. This disclaimer, which indicates Gonzalez could provide additional facts should the motions to dismiss be granted, is not a valid motion to amend. *U.S. ex rel. Willard v. Humana Health Plan of Tex. Inc.*, 336 F.3d 375, 387 (5th Cir. 2003) ("A bare request in an opposition to a motion to dismiss[,] without any indication of the particular grounds on which the amendment is sought[,] . . . does not constitute a motion within the contemplation of Rule 15(a)." (quotation and internal punctuation omitted)).

[8] Because Gonzalez did not file his motion for leave to amend until after judgment was entered, the motion must now be treated as a motion to amend the judgment under Rule 59(e), rather than a motion to amend under Rule 15(a). *Rosenzweig*, 332 F.3d at 864. Although the motion to amend is filed under Rule 59, it is analyzed using the same factors as would normally be considered when ruling on a motion to amend that is filed under Rule 15(a). *Id.*; *Vielma v. Eureka Co.*, 218 F.3d 458, 468 (5th Cir. 2000).

approximately eighteen months that this action was pending prior to its dismissal, even noting in filings in the district court that he possessed these additional facts but chose not to include them.  Thus, with the exception of the claims against Loeb Holding, we now hold that the district court did not abuse its discretion by dismissing the amended complaint with prejudice.

## IV.  CONCLUSION

Accordingly, for the reasons stated by the district court, the dismissal with prejudice is AFFIRMED, except that we modify the dismissal to be without prejudice as to Defendant-Appellee Loeb Holding.