**United States Court of Appeals**
**Fifth Circuit**

**F I L E D**

**April 7, 2006**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 05-60157

_____

GEORGE PAZ, ET AL.,

Plaintiffs-Appellants

versus

BRUSH ENGINEERED MATERIALS, INC. ET AL.,

Defendants-Appellees

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
CONS/W 05-60388

GEORGE PAZ; ET AL.,

Plaintiffs

versus

BRUSH ENGINEERED MATERIALS, INC. ET AL.,

Defendants

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

JOSEPH P HARRIS, ET AL.,

Plaintiffs-Appellants

versus

BRUSH ENGINEERED MATERIALS, INC. ET AL.,

Defendants

WESS-DEL, INC.

Defendant-Appellee

1

_____

Appeals from the United States District Court for
the Southern District of Mississippi
_____

Before DAVIS, SMITH, and DENNIS, Circuit Judges.

DENNIS, Circuit Judge:

Class action appellants have sued the appellees in this case, claiming exposure to airborne beryllium at Boeing's space center facilities in Mississippi. For relief, the appellants seek to establish a medical monitoring fund. Appellee Boeing employs most of the proposed class members, who were allegedly exposed to the beryllium during the manufacture of parts for a space shuttle. Appellant Brush Wellman, Inc. ("Brush Wellman") sold to Boeing many of the beryllium-containing products that are the alleged source of the toxic exposure. Appellant Brush Engineered Materials, Inc.("BEMI") is the parent company of Brush Wellman. Appellant Wess-Del, Inc. ("Wess-Del") is a distributor of beryllium-containing products that allegedly sold such goods to Boeing with the knowledge that they would be used in space shuttle construction in Boeing's Mississippi facility. The appellees moved to dismiss for the following reasons: (1) because Mississippi does not recognize a medical monitoring cause of action; (2) for lack of jurisdiction over the defendants. The district court granted both motions. Upon reviewing the case, we reverse the district court's ruling on jurisdiction and certify the medical monitoring question

to the Mississippi Supreme Court.

## Jurisdiction

The appellants challenge the district court's ruling that it did not have personal jurisdiction over Wess-Del because Wess-Del lacked the requisite contacts with Mississippi. The district court's dismissal for lack of personal jurisdiction is reviewed *de novo*. *Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865, 867 (5th Cir. 2001). Where, as here, the district court rules on a motion to dismiss for lack of personal jurisdiction without an evidentiary hearing, the plaintiff need only make a *prima facie* case that jurisdiction is proper. *Quick Technologies, Inc. v. Sage Group, PLC*, 313 F.3d 338, 343 (5th Cir. 2002) (citations omitted). The district court is not obligated to consult only the assertions in the plaintiff's complaint in determining whether a *prima facie* case for jurisdiction has been made. Rather, the district court may consider the contents of the record at the time of the motion, including affidavits..." *Id*. (citing *Thompson v. Chrysler Motors Corp.*, 755 F.2d 1162, 1165 (5th Cir. 1985)). However, in determining whether a *prima facie* case for personal jurisdiction exists on a motion to dismiss, "uncontroverted allegations in the plaintiff's complaint must be taken as true." *Bullion v. Gillespie*, 895 F.2d 213, 217 (5th Cir. 2005) (citing *D.J. Investments, Inc. v. Metzeler Motorcycle Tire Agent Gregg, Inc.*, 754 F.2d 542, 546 (5th Cir.1985)). See also *Kelly v. Syria Shell Petroleum Dev.,*

3

*B.V.*, 213 F.3d 841, 854 (5th Cir. 2000).

The standard for establishing personal jurisdiction in diversity actions is well settled. A federal court sitting in diversity may exercise personal jurisdiction only to the extent permitted a state court under state law. *Fielding v. Hubert Burda Media, Inc.*, 415 F.3d 419, 424 (5th Cir. 2005). The court may only exercise jurisdiction if: "(1) the state's long-arm statute applies, as interpreted by the state's courts, and (2) if due process is satisfied under the 14th Amendment to the federal Constitution." *Allred v. Moore & Peterson*, 117 F.3d 278 (5th Cir. 1997).

The first determination to be made is whether Mississippi's long-arm statute provides for the exercise of personal jurisdiction over Wess-Del.[1] "Under the tort prong of the Mississippi long-arm statute, personal jurisdiction is proper if any element of the tort (or any part of any element) takes place in Mississippi." *Allred*, 117 F.3d at 282 (citing *Smith v. Temco*, 252 So. 2d 212, 216 (Miss.

---

[1] Mississippi's long-arm statute provides in relevant part that: "Any nonresident... corporation not qualified under the Constitution and laws of this state as to doing business herein, who shall make a contract with a resident of this state to be performed in whole or in part by any party in this state, or who shall commit a tort in whole or in part in this state against a resident or nonresident of this state, or who shall do any business or perform any character of work or service in this state, shall by such act or acts be deemed to be doing business in Mississippi and shall thereby be subjected to the jurisdiction of the courts of this state." Miss. Code Ann. § 13-3-57.

4

1971); *Western Chain Co. v. Brownlee*, 317 So. 2d 418, 421 (Miss. 1975)). Under Mississippi law, causation by the defendant's product or injury within the state is sufficient to establish jurisdiction over the defendant, regardless of whether the defendant had the specific intent that its products be distributed or used in Mississippi. *Smith v. Temco*, 252 So. 2d 212, 216 (Miss. 1971). Here, the injuries and damages allegedly caused by Wess-Del's products took place in the state of Mississippi. As a result, Wess-Del is subject to jurisdiction under the Mississippi long-arm statute.

The next determination that must be made is whether jurisdiction over Wess-Del in this case comports with the due process clause of the 14th Amendment. "Exercising personal jurisdiction over a nonresident defendant is consistent with due process when (1) defendant has purposefully availed himself of the benefits and protections of the forum state by establishing minimum contacts with the forum state, and (2) the exercise of jurisdiction over that defendant does not offend traditional notions of fair play and substantial justice." *Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865, 867 (5th Cir. 2001) (quoting *Alpine View Co. Ltd. v. Atlas Copco AB*, 205 F.3d 208, 214 (5th Cir. 2000)).

Here, the appellants allege that Wess-Del satisfies prong one, the minimum contacts test, under the stream of commerce theory

advanced by the Supreme Court in *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 298 (1980)("The forum State does not exceed its powers under the Due Process Clause if it asserts personal jurisdiction over a corporation that delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum State"). This Circuit's decision in *Ruston Gas Turbines, Inc. v. Donaldson Co., Inc.* is instructive. In *Ruston*, a Minnesota manufacturer that conducted all its business in Minnesota was sued in Texas courts. We held that defendants are subject to specific jurisdiction in Texas courts in situations where the defendant "not only could have foreseen that the products might end up in Texas, it knew as a fact that the products were going to be delivered to a specific user in Houston, Texas." *Ruston Gas Turbines, Inc. v. Donaldson Co., Inc.*, 9 F.3d 415, 420 (5th Cir. 1993).

The appellants allege that Wess-Del knew that the beryllium-containing products it sold to Boeing in California would be used by Boeing at the Stennis Space Center in Mississippi. They also allege that Stennis is the only place where these specific beryllium-containing products could be used and that Wess-Del knew this. In response to the appellants' jurisdictional allegations, Wess-Del submitted an affidavit from its Chief Financial Officer, in which the CFO asserts that all of Wess-Del's transactions with Boeing took place entirely in California and that it conducts no

6

activity whatsoever in Mississippi. The district court relied heavily on this affidavit in finding that Wess-Del lacked minimum contacts with Mississippi. However, the assertions in the affidavit do not contradict the appellants' allegation that Wess-Del knew that after it sold products to Boeing in California, those products would be used by Boeing in Mississippi. Even if every claim in the affidavit is completely true, Wess-Del could still have known full well that the beryllium containing products it sold to Boeing in California were intended to be used exclusively in Mississippi. "When alleged jurisdictional facts are disputed, we must resolve all conflicts in favor of the party seeking to invoke the court's jurisdiction." *Ruston*, 9 F.3d at 418. Thus, taking the jurisdictional allegations of the appellants as true, the appellants have presented a *prima facie* case for Wess-Del's minimum contacts in Mississippi, under the stream of commerce reasoning set forth by the Supreme Court in *World Wide Volkswagen*.

The second prong of the due process analysis requires that "the exercise of jurisdiction over that defendant does not offend traditional notions of fair play and substantial justice." *Panda Brandywine Corp*, 253 F.3d at 867. In confronting this issue, a court examines: (1) the defendant's burden; (2) the forum state's interests; (3) the plaintiff's interest in convenient and effective relief; (4) the judicial system's interest in efficient resolution of controversies; and (5) the state's shared interest in furthering

7

fundamental social policies. *Ruston*, 9 F.3d at 421.  Here, there appears to be no reason why jurisdiction over Wess-Del in Mississippi would run afoul of notions of fair play or substantial justice.  Mississippi has a substantial interest in protecting its citizens from injuries from products used within its borders.  Furthermore, to extend jurisdiction over Wess-Del would efficiently resolve the complaints of an entire class of appellants who allege that they were harmed in Mississippi.  Wess-Del offers no evidence to support a contrary position.  Since Wess-Del's alleged actions satisfy the Mississippi long-arm statute, the plaintiffs have established a *prima facie* case that Wess-Del has minimum contacts with Mississippi, and exercising jurisdiction over Wess-Del in Mississippi would not offend notions of fair play and substantial justice; the due process clause of the 14th amendment is not violated by the exercise of jurisdiction in this case.  For these reasons, we reverse the district court's grant of Wess-Del's motion to dismiss for lack of personal jurisdiction.

<u>Medical Monitoring</u>

This case presents the question of whether a medical monitoring cause of action exists under Mississippi law.  This is an important question of state law which the Mississippi courts have not as yet resolved.  Therefore, the Fifth Circuit, on its own motion, has determined that our proper course, in this diversity jurisdiction case in which we are to apply the law of

8

the State of Mississippi, is to certify the central question in this matter to the Supreme Court of Mississippi.

CERTIFICATE FROM THE UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT TO THE SUPREME COURT OF MISSISSIPPI, PURSUANT TO THE MISSISSIPPI RULE OF APPELLATE PROCEDURE 20.  TO THE SUPREME COURT OF MISSISSIPPI AND THE HONORABLE JUSTICES THEREOF:

## I. STYLE OF THE CASE

The style of the case in which this certificate is made is *George Paz, et al., Plaintiffs-Appellants v. Brush Engineered, Materials, Inc., et al., Defendants-Appellees*, Case No. 05-60157, in the United States Court of Appeals for the Fifth Circuit, on appeal from the United States District Court for the Southern District of Mississippi.  Federal jurisdiction is based on diversity of citizenship.

## II. STATEMENT OF THE CASE

The appellants filed a class action lawsuit alleging that they were exposed to toxic beryllium dust at The Boeing Company ("Boeing") facilities at the Stennis Space Center in Mississippi and at Canoga Park in California.  According to the appellants, exposure to airborne beryllium can cause Chronic Beryllium Disease ("CBD"), an irreversible scarring of the lungs that can

lead to lung failure and death.[2]  However, initial symptoms of the disease do not typically appear until many years after the exposure.  Early detection of the disease during its long latency period can delay and diminish the debilitation caused by the disease.  However, many who have been exposed to beryllium and are at risk for CBD never show any signs of the disease and ultimately experience no ill-effects whatsoever from their beryllium exposure.

The appellants seek the establishment of a court-supervised medical monitoring fund that would pay for regular preventive medical examinations of class members.  The appellants do not allege any present, physical tort injury in the conventional sense.  Nor do they claim that any class members presently have CBD or that their exposure to beryllium has as yet caused physical harm to any class member.  Rather, the appellants claim that, as a result of their being wrongfully exposed to beryllium, ongoing diagnostic examinations are now a medical necessity for them.  The tort injury alleged is the cost to them of these future examinations, not any present physical harm cause by the beryllium exposure.

The appellants filed their complaint in the Southern District of Mississippi on June 30, 2004.  The appellants jointly

---

[2] Because this is a review of a 12(b)(6) dismissal, we must take such facts pleaded in the complaint as true. See *Brown v. Nationsbank Corp.*, 188 F.3d 579, 586 (5th Cir. 1999).

10

moved to dismiss for failure to state a claim upon which relief could be granted, pursuant to Rule of Federal Civil Procedure 12(b)(6). The district court concluded that the plaintiffs could not maintain a claim for medical monitoring because such a cause of action does not exist in Mississippi.

### III. QUESTION CERTIFIED

Whether the laws of Mississippi allow for a medical monitoring cause of action, whereby a plaintiff can recover medical monitoring costs for exposure to a harmful substance without proving current physical injuries from that exposure? This Court disclaims any intention that the Supreme Court of Mississippi confine its reply to the precise form or scope of the legal question that we certify. If the Supreme Court of Mississippi accepts this Certificate, the answers provided by that court will determine the issue on appeal in this case. The record in this case, together with the copies of the parties' briefs, is transmitted herewith.

### Conclusion

For the reasons stated above, the district court's dismissal of the appellants' claims against We-Del for lack of personal jurisdiction is REVERSED. Furthermore, this court has certified the question regarding whether Mississippi has a medical monitoring cause of action to the Mississippi Supreme Court.

**Reversed in Part; Question Certified to the Supreme Court of**

Mississippi.