# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 19-30374
Summary Calendar

United States Court of Appeals
Fifth Circuit

**FILED**

October 22, 2019

Lyle W. Cayce
Clerk

JERRI JONES,

Plaintiff - Appellant

v.

ARTISTS RIGHTS ENFORCEMENT CORPORATION,

Defendant - Appellee

Appeal from the United States District Court
for the Eastern District of Louisiana
USDC 2:19-CV-505

Before KING, GRAVES, and WILLETT, Circuit Judges.

PER CURIAM:*

Jerri Jones appeals the dismissal of her lawsuit arising from a music-royalty dispute. Jones asserts that the district court erred in concluding that it lacked personal jurisdiction over Artists Rights Enforcement Corporation. For the following reasons, we AFFIRM the district court's decision that it lacked jurisdiction.

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 19-30374

## I.

Joan Marie Johnson was a member of the The Dixie Cups, a music group based in Louisiana, and whose debut single, "Chapel of Love," reached number one on the *Billboard* Hot 100 Chart in June 1964. In 1984, Johnson entered into a contract with the Artist Rights Enforcement Corporation ("AREC") to help collect Johnson's music royalties. In return, AREC would keep fifty percent of the royalties it collected. Johnson passed away in 2016 and bequeathed her music royalties to her niece and goddaughter, Jerri Jones.

As relevant here, AREC continued to collect music royalties following Johnson's death. Jones asserts that Johnson's death dissolved AREC's contractual right to collect royalties and filed suit in the Eastern District of Louisiana. AREC filed a motion to dismiss for lack of personal jurisdiction, arguing that AREC is a New York corporation that lacks sufficient minimum contacts with the State of Louisiana. The district court agreed, finding that neither a contractual relationship nor the scant communications between Johnson and AREC were sufficient to establish personal jurisdiction. Jones now appeals.

## II.

We review a district court's determination that it lacks personal jurisdiction de novo. *Pervasive Software, Inc. v. Lexware GmbH*, 688 F.3d 214, 219 (5th Cir. 2012). The party seeking jurisdiction bears the burden of proof but must only present a *prima facie* case. *Id.* To determine whether a *prima facie* case exists, we accept the plaintiff's "uncontroverted allegations" as true and resolve all conflicts of "[jurisdictional] facts contained in the parties' affidavits and other documentation" in the plaintiff's favor. *Freudensprung v. Offshore Tech. Servs., Inc.*, 379 F.3d 327, 343 (5th Cir. 2004) (alteration in original) (citation omitted).

2

No. 19-30374

### III.

A federal court sitting in diversity may exercise personal jurisdiction only to the extent permitted by the long-arm statute of the state in which it sits and the Fourteenth Amendment's due process clause. *Paz v. Brush Engineered Materials, Inc.*, 445 F.3d 809, 812 (5th Cir. 2006). To comport with due process, the defendant must have "establish[ed] minimum contacts with the forum state," and the exercise of jurisdiction must "not offend traditional notions of fair play and substantial justice." *Walk Haydel & Assocs., Inc. v. Coastal Power Prod. Co.*, 517 F.3d 235, 243 (5th Cir. 2008) (quoting *Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865, 867 (5th Cir. 2001)).

Personal jurisdiction may be established through either specific or general jurisdiction. *Daimler AG v. Bauman*, 571 U.S. 117, 127-28 (2014). This court applies a three-step analysis to determine whether specific jurisdiction exists:

> (1) whether the defendant has minimum contacts with the forum state, i.e., whether it purposely directed its activities toward the forum state or purposefully availed itself of the privileges of conducting activities there; (2) whether the plaintiff's cause of action arises out of or results from the defendant's forum-related contacts; and (3) whether the exercise of personal jurisdiction is fair and reasonable.

*Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 271 (5th Cir. 2006) (quoting *Nuovo Pignone, SpA v. STORMAN ASIA M/V*, 310 F.3d 374, 378 (5th Cir. 2002)). By contrast, to establish general jurisdiction over a corporation, the forum state must be its place of incorporation or primary place of business. *See Daimler*, 571 U.S. at 137-38.

Jones asserts two theories on appeal for asserting personal jurisdiction over AREC. First, Jones asserts that Johnson's prior business and contractual relationship with AREC establishes specific jurisdiction in Louisiana. Second,

No. 19-30374

Jones alleges that AREC committed intentionally tortious activity that independently creates specific jurisdiction. Although Jones does not specify the alleged tort on appeal, a conversion claim was included in the original complaint. We conclude that neither theory establishes personal jurisdiction.

**A.**

In the context of business relationships, it is "well settled that 'an individual's contract with an out-of-state party *alone* [cannot] automatically establish sufficient minimum contacts in the other party's home forum.'" *Pervasive Software*, 688 F.3d at 222-23 (alteration in original) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 478 (1985)). Similarly, "[a]n exchange of communications in the course of developing and carrying out a contract also does not, by itself, constitute the required purposeful availment of the benefits and protections of [a forum state's] law." *Moncrief Oil Int'l Inc. v. OAO Gazprom*, 481 F.3d 309, 312 (5th Cir. 2007); *see also Wien Air Alaska, Inc. v. Brandt*, 195 F.3d 208, 213 (5th Cir. 1999).

Instead, the Supreme Court has emphasized a "highly realistic approach" rather than "mechanical tests" or "theories of the place of contracting or of performance" to determine whether personal jurisdiction exists. *Pervasive Software*, 688 F.3d at 223 (internal quotation marks omitted) (quoting *Burger King*, 471 U.S. at 478-79). This approach considers "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing" to determine whether "the defendant purposefully established minimum contacts" with the forum state. *Id.* (quoting *Burger King*, 471 U.S. at 479).

The district court correctly concluded that it lacked personal jurisdiction over AREC. Although Johnson signed the contract in Louisiana, and presumably communicated with AREC from Louisiana, the contract itself was not drafted in Louisiana. Even if the contract was discussed and drafted in

4

Louisiana, the exchange of communications in carrying out a contract is not enough to establish personal jurisdiction. Moreover, these activities could not create a business relationship between Jones and AREC because Jones was not contemplated in the contract or involved in its negotiation.

In addition, neither the terms of the contract nor the parties' actual course of dealing suggests that the defendant purposefully established minimum contacts with Louisiana. AREC did not collect royalties in Louisiana, nor did AREC conduct any other business in Louisiana. When royalties were collected, they were sent to New York and stored in a New York bank. Consequently, both the performance and the focus of the contract occurred outside Louisiana. *See Moncrief Oil*, 481 F.3d at 312 (noting a lack of minimum contacts where "the contract did not require performance in Texas, and the contract is centered outside of Texas"); *see also Int'l Energy Ventures Mgmt., L.L.C. v. United Energy Grp., Ltd.*, 818 F.3d 193, 213 (5th Cir. 2016) (noting that the defendant "had no presence in Texas" because, in part, the agreement "did not require performance in Texas").

Although AREC sent payments to Louisiana, this court has previously indicated that payments are also insufficient to establish minimum contacts with the state. *See, e.g.*, *Hydrokinetics, Inc. v. Alaska Mech., Inc.*, 700 F.2d 1026, 1029 (5th Cir. 1983) (noting that "no performance" took place in the forum state "other than perhaps the payment for the goods"). The payments were sent to Louisiana only because Johnson resided there, which fails to establish purposeful minimum contacts. *See McFadin v. Gerber*, 587 F.3d 753, 761 (5th Cir. 2009) ("The little contact with Texas came only from the fortuity of the plaintiffs' residence there."). Accordingly, Johnson's prior business and contractual relationship is insufficient to establish specific jurisdiction.

No. 19-30374

**B.**

Exercising personal jurisdiction "over an out-of-state intentional tortfeasor must be based on intentional conduct by the defendant that creates the necessary contacts with the forum." *Walden v. Fiore*, 571 U.S. 277, 286 (2014). In other words, the defendant must "commit[] a tort within the state" to establish "sufficient minimum contacts." *Moncrief Oil*, 481 F.3d at 314 (citation omitted). In the case of conversion, "the wrongful exercise of dominion and control over another's property" must occur in the forum state. *Pervasive Software*, 688 F.3d at 229 (citation omitted).

Jones alleges that an intentional tort occurred, but if it did, it was not in Louisiana. AREC is based in New York, and Jones resides in Texas. In the context of an alleged conversion claim, Jones fails to establish how AREC wrongfully exercised dominion and control in Louisiana. *See id.* at 229 (finding a lack of specific jurisdiction because the alleged conversion could not have occurred in the forum state). Consequently, this allegation cannot establish specific jurisdiction.

In sum, AREC has not purposely directed its activities toward Louisiana or purposefully availed itself of the privileges of conducting activities there. Therefore, the district correctly determined that specific jurisdiction was lacking.

**IV.**

For the foregoing reasons, we AFFIRM the district court's dismissal of Jones's claims against AREC.